| 164 | 513 |
| 174 | 72 |
| 174 | 89 |

## THE STATE v. NORTHWAY, Appellant.

### Division Two, November 12, 1901.

1. **Change of Venue:** EVIDENCE. Unless the evidence offered in support of defendant's motion for a change of venue on account of the prejudice of the inhabitants, is preserved in a bill of exceptions, the appellate court will presume that it did not satisfy the circuit court that such prejudice existed.

2. **Obstructive Street Railway:** DESTRUCTION OF TRACK: CONSENT OF OWNERS: INSTRUCTION: NO EVIDENCE. An instruction should not be given in defendant's behalf in a criminal case, if there is no evidence on which to base it. Defendant, who was being tried for having participated with others in the blowing up with dynamite of a cable railway and conduit, asked the court to instruct the jury that they should acquit the defendant if the officers of the road caused or acquiesced in the explosion. *Held*, that this instruction was properly refused because there was no evidence to justify it.

3. ————: CONFESSION: ADMISSION IN EVIDENCE. After being arrested and locked up, defendant made a confession to the chief, assistant chief and other officers of police, in the presence of a number of newspaper reporters, which was taken down in shorthand by the official stenographer of the police department, and by him transcribed upon a typewriter in the presence of these officers and reporters, then read over to defendant, and each page thereof by him signed. The confession was voluntarily made without any promise of leniency on the part of the officers who had defendant in charge. *Held*, to have been properly admitted in evidence.

Vol 164 mo—33

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Chas. T. Noland* for appellant.

*Edward C. Crow,* Attorney-General, for the State; *Morton Jourdan* of counsel.

(1)     Defendant's application for a change of venue alleges: "That the minds of the inhabitants of the city of St. Louis, Missouri, are so prejudiced against him that he can not have a fair trial in the above-entitled cause in said city." This was the only reason or complaint made by defendant. This application will not be considered, for the reason that in the absence of any and all of the testimony in support and opposition thereto, this court will indulge the presumption that the trial court correctly determined the same. In order that an application for a change of venue may be reviewed here it is absolutely necessary that the testimony in support of and in opposition thereto be preserved in the bill of exceptions. The application for change of venue was made under and is governed by sections 2572 and 2576, Revised Statutes 1899, and by no other. The record does not show notice of any character of said application to the circuit attorney. It does not show that "the truth of the allegations" was "proved to the satisfaction of the court by legal and competent evidence." (2)     The court properly overruled the defendant's motion to quash, for the reason that under the express provisions of the statute, either the State or the defendant was entitled to a special jury, upon application therefor. Sec. 3791, R. S. 1899. It will not lie within the mouth of the defendant to complain

that the State failed to pay the fee required by the statute. The statute did not require of the State to pay a fee for a special jury, and the mere fact that the trial court erroneously required a deposit of the sum of $75, can not in any way affect the rights of the defendant. The mere intimation in the motion, without affidavit or testimony to support it, that the money was deposited by a corporation or individual, will not avail the defendant. There is nothing in this record to show by whom any money was deposited, whether by corporation, individual, court officer or circuit attorney. In the absence of any such proof, or even if such proof had been made, that a representative of the State made the required deposit, the motion to quash the venire, was properly overruled. There was no objection by the defendant to the jury when it was called. (3) The instruction asked by the defendant to the effect that if the officers of the Transit Company acquiesced in and induced the commission of the crime, then the defendant was not guilty, was properly refused, for the reason: First. Because it was not the law, and could not be the law. If such a condition had existed, then the officers of the Transit Company would have been accessories to the crime, but the crime would, nevertheless, have been committed by the defendant. Second. This instruction was properly refused because there was not one word of testimony, not even an intimation in the entire record, save the suggestion in the form of his counsel's questions, to support it.

GANTT, J.—The defendant in this case was jointly indicted with Morris Brennan for maliciously blowing up and obstructing a street railway track, owned by the St. Louis Transit Company, on the eleventh day of August, 1900. He was duly arraigned, pleaded not guilty and a severance was granted. The indictment is entirely sufficient. We have not been

favored with a brief by the defendant's counsel, but a very full brief and abstract of the record has been printed and filed by the Attorney-General and special counsel for the State.

A continuance was granted, and the cause came on for trial January 2, 1901, and the defendant was convicted and his punishment assessed at eight years in the penitentiary. From the sentence on this verdict he appeals.

The evidence upon the part of the State, including a written confession of the defendant, shows the following state of facts: On and for a long time prior to August 11, 1900, the St. Louis Transit Company was a corporation, duly organized under the laws of the State of Missouri, and as such was engaged in operating, for the conveyance and transportation of passengers, a line of cable railroad, along and upon Maryland avenue, between Euclid avenue and Taylor avenue, generally known as the Olive street line in the city of St. Louis. On said day and prior thereto "a strike" existed between the employees of the railroad and the said railroad. On the evening prior to the eleventh of August, Morris Brennan, James Schwartz and Fred Northway, met at the residence of Morris Brennan, secured a large quantity of certain explosive and dangerous material and compound, commonly known as dynamite, and there arranged and agreed on that night, to go out and dynamite, and thus tear up, remove and destroy certain portions of the railroad of the St. Louis Transit Company, for the purpose of rendering a portion of said line impassable, and to deter passengers from riding upon the cars of the said Transit Company. On the evening of the eleventh of August they secured a minnow bucket, a revolver, and took this dynamite, and started to a place on the Olive street line for the purpose of blowing it up. They proceeded to a point on Maryland avenue, between Euclid and Taylor avenues, in the western portion of the city, and there they agreed that that was

the proper place in which to place the charge. .They waited until a car had gone west, knowing that the same must be switched at King's highway, two blocks further west, and then return east. One of the defendants sat upon the side of the street holding a revolver, while another lifted the manhole, the iron cover to the hole in which the track and conduit of the company, could be reached, and there placed the charge of dynamite with a fuse attached in the conduit of the railroad track, and lighted it. They then turned and walked east along Maryland avenue to Taylor avenue, one block, and then started north. When they had proceeded a block and a half, or two blocks, from the place where they had placed the dynamite, the explosion occurred. Almost immediately after the explosion they were met by Private Watchman Higgins, and fully questioned as to where they had been, to which questions they answered that they had been fishing at Creve Coeur Lake, which is not in that direction, and while being detained by Higgins, Messrs. Lackland and McCluney, who resided in that neighborhood, came upon the scene. At the suggestion of Lackland, the defendants were searched. A revolver was found upon Northway, and the minnow bucket found in their possession found to be dry, and a card taken from this defendant showing his membership in one of the unions, as well as his name and residence. They were asked what the explosion was, and one of them said, "Evidently a gas stove." They were then allowed to proceed.

Returning to the scene of the explosion, the testimony shows that the cable train on the Olive street line was coming east towards King's highway, and that when eight or ten feet from the place where the dynamite had been placed, the motorman in charge, and on the front end, saw smoke arising from the slot; that he knew that it was impossible for him to stop; that he tightened the grip, and attempted to pass over before

the explosion occurred.   This train consisted of a grip car and a trailer.   After the trailer had passed about eight feet from the place where the smoke was seen, the explosion occurred. So violent was it that it blew the window lights out of the train; it blew the motorman, who was then thirty or forty feet away, out of the car and into the street; it destroyed the track, blew out the concrete conduit and roadway, blew off the pulleys and rollers, and closed the slot through which the grip ran, all of which constituted portions of the railroad, and the works thereof, and rendered it impossible to pass any train over that track until it was repaired.   The testimony further shows that a hole was blown in the concrete and pavement of the street from three to four feet square; that at the time of this explosion the conductor and motorman were on this train, also a passenger or two.   It is clearly shown from the testimony that, as a result of this explosion, it was impossible for the car or train next to come along said track to pass.

The officers of the Transit Company had been warned that this explosion was to occur somewhere on the west end of the Olive street division.   In this particular case the superintendent, Mr. Davidson, had been told by Richard Eaton, and at the moment of the explosion he and Eaton were riding in Davidson's buggy west on Sarah street, four blocks east and two blocks north of where the explosion occurred, going as fast as they could along the line of the Olive street division for the purpose of stopping the explosion if possible and of capturing the persons engaged therein.   Eaton was in the buggy with Davidson four blocks east and two blocks north of where the explosion occurred at the moment when the report was heard.

Chief Campbell and other officers of the police department arrived a few minutes after the explosion, having been also notified.   With the information given them by private watchman, Higgins, who knew one of the men, and with the infor-

mation gathered from the reading of the union card held by one of them, all three of the defendants were located and arrested that night. When Brennan was arrested, his house was searched by Assistant Chief Pickel, Dr. Brokaw and others, and a quantity of dynamite was found secreted in the closet, and a quantity of fuse secreted in the basement.

After being taken to the police station and locked up, the defendant Northway made a confession to Chiefs Campbell and Pickel and others of the police force, in the presence of a number of newspaper reporters, which confession was taken in shorthand by the official stenographer of the police department, R. T. Shaw, by him transcribed upon the typewriter in the presence of these officers and newspaper reporters, read over to the defendant, and each page of said confession was by the defendant signed. This confession is not set out in full, as it corroborates and fully sustains the confession of Morris Brennan, which is set forth in full in the opinion in State v. Brennan filed on this day and reported at page 487 of this volume, except that Northway says Brennan lighted the fuse and Brennan says he sat on the street side and held the pistol. There was ample evidence that this confession was voluntarily made without any hope or promise of leniency on the part of the officers who had the defendant in charge. In addition to this confession the evidence shows that the defendant stated to W. C. McCarthy, the reporter of the Post-Dispatch, as he talked to the defendant at the holdover on the thirteenth of August, which was the first or second day after the crime was committed, that they started from Whalen's saloon on Easton avenue and went over to blow up the conduit of the Olive street cable; that that was the purpose he, Brennan and Schwartz had in going over there. The motive as shown by all of the testimony was to blow up the conduit and track of the Olive street division on Maryland avenue, for the purpose of obstructing

the passage of the cars next to come along said track. The testimony shows that the explosive placed in the conduit was dynamite; that it was of sufficient force to and did blow up from two to four feet square in the concrete, and that it blew the pulleys, cable, manhole, track and roadbed into atoms, and closed the slot through which the grip attached to the cable must pass in order to propel the cars, so that the cars next to come along said track could not pass, but were obstructed.

The defense was an attempted alibi. The defendant admitted being at the scene of the crime immediately before the explosion, but stated that he left there after attempting to persuade Richard Eaton not to dynamite the track. The testimony of Richard Eaton, who was called by the defendant in this case, was corroborated by that of Mr. Davidson that he was not at the scene of the explosion at the time it occurred, but was six blocks away in the buggy and in company with General Superintendent Davidson, and hence could not have been at the scene of the explosion. The defendant also attempted to prove good character.

The court gave full and explicit instructions upon every phase of the case, but it is deemed unnecessary to incumber this opinion with them, as they are not challenged and are such as have again and again been approved by this court. The defendant asked one instruction, which the court refused. It is as follows: "This court instructs the jury that if the officers of the St. Louis Transit Company caused or acquiesced in the explosion of dynamite in the conduit of the Olive street division of said company at a point upon Maryland avenue near Taylor avenue, then the jury should acquit the defendant."

I. In the absence of statement or brief by defendant or his counsel we have looked to the motion for new trial to ascertain the grounds upon which defendant seeks a reversal. Among other reasons, he asserts the court erred in denying him

a change of venue on the ground that the minds of the inhabitants of St. Louis are so prejudiced against him that he could not have a fair trial.    That was the only ground alleged. None of the evidence produced to sustain this application has been incorporated in the bill of exceptions. The statute, section 2576, Revised Statutes 1899, requires the defendant to prove the allegations of his petition for a change of venue "to the satisfaction of the court by legal and competent evidence." Every presumption must be indulged that the evidence offered did not satisfy the circuit court that the alleged prejudice existed.    The burden is on defendant to show error, and this could only be done by bringing all the evidence here and showing that the trial judge was clearly wrong.

II.    No error was committed in denying the instruction asked by defendant.    There was absolutely no evidence to justify such a direction to the jury.

III.    The challenge was properly denied because it stated a mere legal conclusion and no fact showing how or in what manner the *venire* was illegally selected.    The mere unsupported assertion in the motion that the fee required by the statute was advanced by some individual and not by the State, will not convict the circuit court of error.

As to the other assignments, we have already said the confession was properly admitted in evidence, and the instructions were correct, fair and full.    The evidence was such that the jury could have reached no other conclusion than they did unless they rejected the testimony of all the State's witnesses. They saw fit to credit their evidence and the verdict must stand.

The judgment is affirmed.    All concur.